UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Ryan Hall,<br><br>　　Plaintiff,<br><br>v.<br><br>Jonathan O'Hara, Esq.<br><br>　　Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE INDIANA DECEPTIVE CONSUMER SALES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## **PARTIES**

1. Plaintiff, Ryan Hall ("Ryan"), is a natural person who resided in Rensselaer, Indiana, at all times relevant to this action.

2. Defendant, Jonathan O'Hara ("O'Hara"), is an attorney licensed to practice in Indiana who maintained his principal place of business in Valparaiso, Indiana, at all times relevant to this action.

## **JURISDICTION AND VENUE**

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Indiana Deceptive Consumer Sales Act, I.C. 24-5-0.5 et seq. ("IDCSA"), because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

1

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, O'Hara collected consumer debts.

7. O'Hara regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. O'Hara is a "debt collector" that regularly collects consumer debts as defined by 15 U.S.C. §1692a(6).

9. O'Hara is a "supplier" as defined by § 24-5-0.5-2(a)(3) of the IDCSA.

10. As described, *infra*, O'Hara engaged in protracted collection activity against Ryan to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Ryan is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. In 2019, O'Hara filed a lawsuit against Ryan in Porter Superior Court in Valparaiso to collect a debt Ryan allegedly incurred under the care of a psychiatrist.

14. Ryan remained unaware of this alleged debt until late fall 2022, as described, *supra*.

15. Upon initiating O'Hara's lawsuit against Ryan, O'Hara listed an address for Ryan that was outdated and false ("Sturdy Road").

16. At the time, O'Hara listed Sturdy Road as a good address for Ryan despite Ryan not living at Sturdy Road.

17. None-the-less, O'Hara attempted to serve Ryan with notice of the lawsuit at this address.

18. As a result, the United States Postal Service ("USPS") notified O'Hara that the address it was attempting to use to serve Ryan was not proper.

19. Specifically, the certified mailing O'Hara instructed USPS to mail to Sturdy Road was returned by USPS as "unclaimed/unable to forward". *See* Exhibit A

20. Despite receiving actual notice from USPS that indicated Ryan did not live at Sturdy Road, O'Hara failed to investigate Ryan's correct address.

21. Instead, despite receiving actual notice from USPS that indicated Ryan did not live at Sturdy Road, O'Hara directed the county sheriff to simply leave a copy of O'Hara's collection lawsuit at the door of Sturdy Road. *See* Exhibit B

22. Because Ryan did not live at Sturdy Road, Ryan remained unaware of this alleged debt until late fall 2022, as described, *supra*.

23. Relying on his "sewer service", in June 2019, O'Hara improperly moved for, and therefore improperly obtained, a Default Judgment against Ryan.

24. Relying on his sewer service, O'Hara spent the remainder of 2019 attempting to execute on the Default Judgment.

25. During 2019, 2020, 2021 and 2022, O'Hara refused to obtain Ryan's correct address.

26. Between 2019 – 2021, O'Hara filed more than 10 (ten) motions with the court seeking relief, none of which it properly served Ryan.

27. In fact, for unknown reasons, throughout these years, O'Hara began changing the address at which he was allegedly serving Ryan, *all of which* were incorrect.

28. Despite this, on numerous occasions, between 2019 - 2022, O'Hara certified to the Court that it had properly served Ryan with various requisite notices, despite knowing, or should have knowing, that his certifications were false as he was sending the documents to improper addresses.

29. In late 2022, prior to learning of the Judgment, Ryan realized that he was unable to afford Christmas presents for his children and, as a result, asked his employer if he could "sell" his accrued vacation days to enable him to have liquidity to afford presents.

30. Despite it being against company policy, Ryan's employer agreed to exchange Ryan's accrued vacation days for money.

31. Almost immediately thereafter, in late 2022, during one of his many ex parte communications, O'Hara served Ryan's employer with an Order to garnish Ryan's wages.

32. Prior to seeking this Order, O'Hara knew and/or had reason to know that Ryan had not received *any* notice of O'Hara's lawsuit O'Hara filed years prior.

33. As a result, Ryan's employer was forced to send Ryan's wages and Ryan's children's Christmas gift money to O'Hara.

34. Upon learning of O'Hara's garnishment, Ryan was devastated and perplexed.

35. In late 2022, Ryan's employer provided Ryan with a copy of the Garnishment Order. This was the first time Ryan ever learned of O'Hara's 2019 lawsuit.

36. Around this time, in late 2022, Ryan discovered O'Hara had used another incorrect address, as a supposed proper service address, but this time one that was completely fabricated.

37. Ryan immediately telephoned O'Hara to understand why Ryan's wages were being garnished and to, specifically, inform O'Hara that the new address he was certifying to the court as Ryan's address was incorrect.

38. Ryan began explaining his situation to O'Hara and was shocked when O'Hara began belittling and mocking him on the telephone.

39. Although Ryan requested that O'Hara update the court with Ryan's correct address, O'Hara refused to even write it down and, in fact, hung up on Ryan while Ryan was mid-sentence.

40. On information and belief, O'Hara did not notify Ryan that he was a debt collector attempting to collect a debt.

41. This telephone conversation between O'Hara and Ryan was the "initial communication" pursuant to 15 U.S.C. 1692g.

42. Despite this, within 5 days of this communication, O'Hara failed to mail Ryan a the "G Notice" required by the FDCPA.

43. At the time of filling this case, O'Hara still refuses to update Ryan's address with the Court.

44. As a result of O'Hara's conduct, Ryan had to drive hours to the Porter County Courthouse to obtain the documents O'Hara had failed to properly serve upon him.

45. As a result of O'Hara's conduct, Ryan had to pay for gas, food and spend $61.00 in copying fees to get copies of the documents that O'Hara failed to properly serve upon him. *See* Exhibit C

46. As a result of O'Hara's conduct, Ryan retained a consumer protection attorney for advice.

47. As part of those services, Ryan's attorney contacted O'Hara to notify O'Hara that it had, and was, using entirely incorrect addresses for Ryan.

48. Rather than take the opportunity to obtain Ryan's correct address, O'Hara's only response was to defend his illegal actions and to threaten Ryan's attorney.

49. At the time of filling this case, O'Hara *still* has not notified the local Indiana court of Ryan's correct address.

50. As a result of O'Hara's conduct, Ryan lost future work vacation days.

51. As a result of O'Hara's conduct, Ryan's children did not receive Christmas Gifts truly from Ryan.

52. As a result of O'Hara's conduct, Ryan was forced to pay O'Hara considerable amounts of interest that accrued simply as a result of Ryan being unaware of the lawsuit and/or judgment.

53. O'Hara's improper collection efforts caused Ryan emotional distress in the form of frustration, annoyance, aggravation and anxiety.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

54. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 53 above as if fully set forth herein.

55. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

56. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

57. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

58. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

59. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 53 above as if fully set forth herein.

60. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA.  *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee.  If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

61. On information and belief, Defendant conducted itself in this case consistent with their internal policies and procedures relating to service.

62. Defendant's policies and procedures, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

63. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

64. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

65. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 53 above as if fully set forth herein.

66. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

67. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 53 above as if fully set forth herein.

68. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

69. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 53 above as if fully set forth herein.

70. Defendant violated 15 U.S.C. §1692g by failing to send Plaintiff the required notice within five days of Defendant's initial communication with Plaintiff.

## COUNT SIX

### Violation of the Indiana Deceptive Consumer Sales Act

71. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 53 above as if fully set forth herein.

72. The IDCSA states, in relevant part:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. § 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.), including any rules or regulations issued under the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.)." I.C. § 24-5-0.5-3(b)(20).

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. § 24-5-0.5-4(a)(1)(2).

73. Defendant's collection activity in connection with the Subject Debt is a "consumer transaction" as that term is defined by the IDCSA at I.C. § 24-5-0.5-2(a)(1)(C).

74. Defendant engaged in unfair, abusive, and deceptive conduct in its transactions with Plaintiff, in violation of I.C. §§ 24-5-0.5-3(20), violating the FDCPA.

75. Defendant intended that Plaintiff rely on its unlawful communications in order to procure immediate payment of the debt and/or prevent Plaintiff from exercising his rights. As such, Defendant committed a "willful deceptive act" as that term is used and/or contemplated within the IDCSA.

76. Plaintiff has been harmed and has suffered damages as a result of Defendant's unlawful collection practices as described herein.

77. Plaintiff is therefore entitled to relief pursuant to I.C. § 24-5-0.5-4(a)(1)(2).

## JURY DEMAND

78. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

79. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant for statutory damages as provided under I.C. § 24-5-0.5-4(a)(1)(2).

    c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:   February 7, 2023

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*